UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>SHALEN J. BENNION and CHEYENNE A. BENNION,<br><br>Debtors. | Case No. 22-00102-NGH<br><br>Chapter 11, Subchapter V |

### MEMORANDUM OF DECISION

Before the Court is the U.S. Trustee's Objection to Election to Proceed under Subchapter V (the "Objection"). Doc. No. 29. The parties filed a stipulation (the "Stipulation") establishing the relevant facts.[1] Doc. No. 35. The parties presented their arguments at a hearing on July 6, 2022, after which the Court took the issue under advisement. After considering the record, arguments of the parties, and applicable law, the following constitutes the Court's findings, conclusions, and disposition of the issues.

### BACKGROUND

Shalen and Cheyenne Bennion ("Debtors")[2] filed a voluntary chapter 11, subchapter V petition on March 18, 2022. Doc. No. 1.[3] The U.S. Trustee timely filed the Objection asserting Debtors are not eligible to be debtors under subchapter V because

---

[1] Any additional factual assertions made during the hearing on the matter were outside the scope of the Stipulation and not considered in rendering this decision.

[2] Because Debtors share the same last name, any reference to each individually will be by their first name.

[3] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION - 1

50% or more of Debtors' debts did not arise from commercial or business activities. Doc. No. 29 at 6.

Shalen once worked for the U.S. Forest Service where he received training in tree-felling and effectively clearing scrub, brush, and timber from land. Doc. No. 35 at 1. Shalen subsequently formed his own business, which he began as a sole proprietorship and later changed to Weiser River Customs, LLC. The business "focused on contracting, specializing in remodels, new construction, and excavation work." *Id.* at 2. Shalen performs tree-felling and land-clearing as part of the excavation work. *Id.*

In June 2021, Shalen was felling trees on his mother and stepfather's property in Adams County, Idaho, to provide a clearing around structures and remove fire fuels to mitigate the risks of loss associated with wildland fire. Though this is the type of work Shalen would normally charge customers for while operating his business, "[be]cause the owners of this property were Shalen's mother and step-father, he chose to perform the tree-felling services for no charge." *Id.* "There was no contract in place for the work." *Id.*

While performing the work, a tree fell in an unexpected direction, bounced off the roof of a nearby structure, and crushed Shalen. *Id.* at 3. Shalen received emergency medical treatment, and as a result, Debtors now have significant medical debt that makes up approximately 90% of their aggregate noncontingent liquidated secured and unsecured debts, as of the petition date. *Id.* at 3–4. Since recovering from the accident, Shalen returned to the property to complete the work and was compensated for the post-accident services. *Id.* at 3.

MEMORANDUM OF DECISION - 2

ANALYSIS

A.     **Subchapter V Eligibility**

   1.     **Standards**

Debtors have elected to proceed under chapter 11, subchapter V. Subchapter V, created as part of the Small Business Reorganization Act of 2019 ("SBRA"), was implemented to provide small business debtors a more streamlined bankruptcy process. Pub. L. No. 116-54, 133 Stat. 1079 (2019). Section 1182(1) defines a debtor under chapter 11, subchapter V to mean:

> a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title an excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $7,500,000 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor

Debtors bear the burden to establish they are eligible to proceed under subchapter V. *In re RS Air, LLC*, 638 B.R. 403, 414 (9th Cir. BAP 2022).

   2.     **Debts which "arose from the commercial or business activities of the debtor"**

At issue here is whether Debtors have satisfied the requirement that no less than 50% of their debts arise from their commercial or business activities. The Bankruptcy Code does not define "commercial or business activities." In interpreting the phrase, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") noted that "courts have generally held the scope of commercial or business activities is very broad and apply a 'totality of the circumstances' standard." *RS*

MEMORANDUM OF DECISION - 3

*Air*, 638 B.R. at 410 (citing *Nat'l Loan Invs., L.P. v. Rickerson (In re Rickerson)*, 636 B.R. 416, 425–26 (Bankr. W.D. Pa. 2021)).

In *RS Air*, the BAP considered the meaning of "business," "which is defined as 'a usually commercial or mercantile activity engaged in as a means of livelihood," or "dealings or transactions especially of an economic nature.'" *Id.* at 411 (quoting *Business*, MERRIAM-WEBSTER ONLINE DICTIONARY, https://www.merriamwebster.com/dictionary/business). Further, the BAP looked to decisions that found profit motivation unnecessary: *In re Ellingsworth Residential Cmty. Ass'n, Inc.*, 619 B.R. 519, 521 (Bankr. M.D. Fla. 2020) (holding that the plain meaning of commerce or business does not require profit motivation); *In re Family Friendly Contracting LLC*, 2021 WL 5540887, at *3 (Bankr. D. Md. Oct. 26, 2021) (noting that the broader definition of "commercial or business activities" is in keeping with the purpose of the SBRA). Applying a broad definition, the BAP held that "commercial or business activities" does not require profit motivation. *RS Air*, 638 B.R. at 413.

Courts have also looked to the definition of "consumer debt" when considering what constitutes a debt arising from a commercial or business activity. *In re Sullivan*, 626 B.R. 326, 331 (Bankr. D. Colo. 2021); *Ellingsworth*, 619 B.R. at 521. "Consumer debts" is defined under § 101(8) as a "debt incurred by an individual primarily for personal, family, or household purpose." In *Ellingsworth*, the court determined that, in contrast to consumer debt, a debt that arises from a commercial or business activity is one that is not of a personal, family, or

MEMORANDUM OF DECISION - 4

household nature and is connected with business operations. 619 B.R. at 521. To determine whether the nature of the transaction was commercial or consumer, the court should "look to the substance, rather than the form, of the transaction, and determine the primary purpose of the transaction." *Family Friendly Contracting*, 2021 WL 5540887, at *4.

      The U.S. Trustee argues that Shalen was not providing services motivated by earning a profit, and therefore, the emergency medical debt related to the accident does not arise from a commercial or business activity. However, as the BAP noted, applying a broad definition to the phrase "commercial or business activities" does not require profit motivation. *RS Air*, 638 B.R. at 413. Because profit motivation is not required for activities to be considered "commercial", the fact that Shalen performed the work for free is alone not dispositive.

      However, when considering the purpose of the transaction, the Court finds the activities were not "commercial or business" in nature. There was no contract in place for the work performed, and Shalen did not charge his family for the services. Doc. No. 35 at 2–3. Debtors argue the work performed was a "commercial or business activity" because this is the sort of service that Shalen regularly provides as part of his business, and they point to the fact that Shalen has since returned to the property and been compensated for post-accident work.

      While this sort of work is within the scope of Shalen's business activities, the Court must consider the purpose of this particular transaction, not just the form. Here, the record does not support a finding that Shalen was performing this

MEMORANDUM OF DECISION - 5

work in a business capacity or in connection with any economic purpose. Rather, the work was done on family property, for the benefit of his family, at no charge. The work related to the accident was done for a personal or family purpose. Further, the fact that Shalen was compensated for post-accident work does not change the nature or purpose of the initial work, nor does it change the nature of the medical debt arising out of the accident from that work.

Even under a broad definition, the work performed when the accident occurred was not a commercial or business activity. Because the resulting medical debts account for approximately 90% of Debtors' debts as of the petition date, Debtors cannot satisfy the § 1182(1) requirement that 50% or more of their debts arose from commercial or business activities. Accordingly, Debtors are not eligible to be debtors in subchapter V. The Court will therefore strike Debtors' subchapter V designation.

**CONCLUSION**

The Court will sustain the U.S. Trustee's Objection to Election to Proceed under Subchapter V, and enter an appropriate order consistent with this decision.

DATED: July 29, 2022



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 6